Tolchester Beach Improvement Co. *vs.* Steinmeier.

(Decided 18th June, 1890.)

---

# The Tolchester Beach Improvement Company of Kent County *vs.* Daniel Steinmeier.

*Liability of Corporation for False imprisonment—Special policeman under Sections 280-293 of the Code.*

In order to make a corporation answerable for the acts of its superintendent, the acts must appear to have been done within the scope and limits of his authority. The term superintendent does not of itself import that such officer has authority to order an arrest.

An action was brought against a corporation for a false imprisonment. The arrest was made off the premises of the defendant; and the order to make the arrest was given by the defendant's superintendent, who was not shown to have been clothed with authority for that purpose, and at the time of giving the order was not upon the premises of the defendant. The officer making the arrest was a special policeman commissioned by the Governor of the State upon the application of the defendant, under the provisions of Article 23, sections 280-293, of the Code, "for the protection of the property of the corporation, and for the preservation of peace and good order on the premises," and his compensation under the law was payable by the defendant. HELD:

1st. That the defendant was not bound for the policeman's acts simply because he was appointed by the Governor at its nomination, or request, and because it paid his salary.

2nd. That the act of the policeman was that of a State officer in the exercise of his common law powers as such officer, and not executing the orders of the defendant.

3rd. That the act of arrest, to be effectually ratified by the defendant, must have been the act of its agent authorized to commit it.

APPEAL from the Circuit Court for Talbot County.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., MILLER, IRVING, BRYAN, FOWLER, MCSHERRY, and BRISCOE, J.

*Albert Constable,* and *Henry V. D. Johns,* for the appellant.

*Harrison W. Vickers,* and *James A. Pearce,* for the appellʌe.

IRVING, J., delivered the opinion of the Court.

This is a suit for assault and false imprisonment. The appellant is a corporation known as "The Tolchester Beach Improvement Company of Kent County," and carries on an excursion business, by steamboats, bringing passengers from Baltimore and elsewhere to Tolchester Beach, in Kent County, where the company has a wharf, hotel, baths, small boats for hire, &c. The plaintiff carried on a business on the shore in hiring small boats and fishing tackle, and got his customers mainly from persons who were appellant's excursionists; and out of this rivalry in trade grew ill feeling and controversy, which culminated in the quarrel which gave rise to this suit. A public county road ran through the appellant's grounds to the water, where there was a public landing adjoining the appellant's premises and wharf; and on this public landing this controversy had its origin.

Tolchester Beach Improvement Co. *vs.* Steinmeier.

Upon application to the Governor of the State, the appellant had secured the appointment of Thomas J. Fletcher as a policeman "for the protection of the property of the corporation, and for the preservation of peace and good order on their premises." This officer was appointed on the nomination of the appellant, and was duly commissioned as a State officer under the seal of the State, under the Act of 1880, charter 460, which gives sections 288, 289, 290, 291, 292 and 293 to the present Code, Article 23. Oliver H. Paxton was appellant's superintendent at the beach, and he was, on the occasion of this disturbance, engaged in booming and securing certain drift-logs which had come down the bay and floated around the appellant's wharf and the public landing. He was upon the *public landing*, and securing them *there*. The plaintiff (appellee here) and his partner came with their boat and found their access to the landing obstructed. The appellee came ashore by stepping on the logs, obtained a rope to throw to his partner in the boat, in order to draw the boat around the logs, and make it fast. His contention is, that he stepped on a log upon which Paxton was standing, and in throwing the line the log turned in the water, and cast him and Paxton both into the water, whereupon the appellee contends and testified that Paxton at once ordered Fletcher to arrest him, saying, "Didn't you see him strike me?" Paxton's contention is that appellee wilfully took hold of him and pushed him into the water. It makes no difference which is right in that particular, so far as the questions for our decision are concerned. Fletcher approached to arrest the appellee, but appellee drew his pistol and prevented the arrest then and there being consummated, boarded his boat and went around to his own premises, which he had under lease from the owners. Fletcher, without warrant, pursued him to his own premises, and, having arrested him, handcuffed him, and took him to jail, where appel-

lee remained until, after trial for alleged assault, he was acquitted and discharged.

The appellant depends upon the contention that it is not responsible for this arrest and imprisonment because Fletcher was not acting as their employé ; and that, if he was acting because of an order from Paxton, *he* had no *authority to order an arrest.* The Circuit Court ruled that Fletcher and Paxton were both officers of the company, and held the company responsible, and hence this appeal.

Paxton was, without doubt, an officer of the company, but because he was such officer it does not follow that he had authority to order an arrest, and bind the company for the consequences of it. He was superintendent of the company at the beach. That office is not mentioned and described in the charter, and what the duties and authority of such superintendent were the appellee offered no proof ; while the appellant offered evidence that it was of a restricted character, and did not embrace any authority to order an arrest. If the company was to be bound by Paxton's act in directing the arrest, it must be because the term "superintendent," of itself, and of necessity, imported such authority ; for, to make the company answerable for his acts, the acts must appear to have been done within the scope and limits of his authority. It would be a most unwarranted inference from the simple fact that he bore that name, that the alleged act was authorized by the company. It was the criminal law of the State which was put in operation; and before the corporation can be held answerable for such act, this Court said in *Carter vs. The Howe Machine Co.,* 51 *Md.,* 298 : "It should be made to appear that the agent was expressly authorized to act as he did by the corporation. The doing of such an act could not, in the nature of things, be in the exercise of the ordinary duties of the agent or servant entrusted with the cus-

tody of. the company's money or goods, and before the corporation can be made liable for such an act, it must be shown either that there was express precedent authority for doing the act, or that the act has been ratified and adopted by the corporation." There was certainly no express precedent authority to Paxton to set in motion the criminal law of the State, and we shall see hereafter that there was no ratification and adoption of it by the appellant.

The question now arises, was the Circuit Court right in holding the appellant answerable for the act of Fletcher? Was Fletcher such officer of the company, and clothed with such powers of arrest, as made the company liable for. his arrest, maltreatment, and imprisonment of Steinmeier? For the purposes of this decision, and in support of our view, it is not necessary for us to hold that Fletcher was in no sense an officer of the company, and that, if called on to enforce regulations and by-laws of the company, and he did so purely because of his relation to the company, the company would not be answerable for what was wrongfully done in pursuance of that authority, but within the scope of his employment. But primarily Fletcher was a State officer, appointed by the Governor under the law and commissioned accordingly. It is true he was appointed upon the nomination or designation of the appellant, and by the law was to receive his compensation from the appellant. He was removable at the pleasure of the Governor, by the express provision of sec. 289 of Art. 23 of the Code ; and if the company wanted such a policeman still, in such case it would have to nominate another man. It is true that under sec. 293, when *the services* of such policeman were "no longer required," the company could file a notice to that effect in the office where his oath was recorded, and then he could be discharged. But it is to be noted that this power on the part of the

company existed only when the company no longer *needed* such an officer.    If such officer was still needed, but the incumbent was inefficient or unsatisfactory, resort to the Governor for relief under his power of removal *at pleasure* would seem necessary.    He took the oath taken by all other police officers.    He was responsible to the State for the proper discharge of his duty, and not to the company. He was not answerable to the company, but to the State, and could be indicted for malfeasance as any other State officer.    His duty was the same as any other policeman or constable.    His authority was co-extensive with the limits of Kent County and the City of Baltimore, "and for the protection of the property of said corporation, and the preservation of peace and good order on its premises," the law authorized the corporation to command his presence on their boats and premises on the condition of paying his whole compensation, and that no part of his compensation was to be chargeable against the State or county. Secs. 290 and 292.    It was for the privilege of commanding, at all times when needed, an officer with constabulary power for the protection of their property and preserving the peace on their boats and premises, where in their peculiar business a need for such person, clothed with such authority, so often arose, that the law required such corporations to pay his salary.    In *Sinclair vs. Mayor, &c., of Baltimore*, 59 *Md.*, 592, this Court decided that the City of Baltimore was not responsible for wanton acts of its policemen in their discharge of duty, notwithstanding their compensation was paid by the city. It would seem, therefore, that this company was not bound for Fletcher's acts simply because appointed by the Governor at its designation, nomination or request, and because it paid his salary.    He was undoubtedly a State officer, and whenever he attempted to enforce the criminal laws of the State, he did it in violation of his oath as a State officer and in the exercise of his common

Tolchester Beach Improvement Co. *vs.* Steinmeier.

law power as such officer ; and the company had no *quasi judicial* power to order him to arrest any one ; and certainly none to restrain him in the exercise of his office when his sworn duty required him to do anything of the kind. The company needed such officer at command because neither it nor its officers had *the power* with which the law *clothed him.* In addition to all these reasons why Fletcher's act cannot be regarded as the act of the appellant, it is to be noted especially that, so far as the appellant is concerned, his duty to it, so far as the exercise of his peace-power was concerned, is, by the language of the statute and his commission, restricted to *the premises* of the company. Whatever was done was not done on the premises of the company ; nor was the *order* of Paxton given on the premises of the company. The occasion for such order arose on the public highway, and the arrest was, in fact, actually made on the plaintiff's own premises. It cannot be contended that it was done in the preservation of the property of the company ; for assuming that in collecting the drift-logs the superintendent was acting for the company (which its president denies), still it is not contended that the plaintiff was interfering to prevent their collection and being secured. The testimony only shows that Paxton complained of the plaintiff's assaulting and casting him into the water, and for that ordered the arrest. That which Fletcher did was in the execution of the criminal law upon his own view of the affair, without warrant, and in discharge of what he supposed was his duty at common law. It is worthy of note also that by plaintiff's own testimony Paxton told Fletcher to "get a warrant," which was not done.

Unless the trespass was to the use or benefit of the defendant, he cannot be held to have effectually adopted it after it was done. *Ewell's Evans on Agency, 2 Eng. Ed.,* 84. There is not the slightest ground for appellee's contention in that respect. The act of Fletcher in no way

Tolchester Beach Improvement Co. *vs.* Steinmeier.

enured to benefit of the appellant. It is useless to discuss this contention on the part of the appellee; for by the sixth prayer of the appellant granted by the Court below and not excepted to or appealed from, it became the law of this case that there was no evidence of liability arising in that way. The contention is based wholly on declarations of Eliason, the president of the company, and of Paxton, the superintendent, made after Fletcher's trial, acquittal, and discharge. Those declarations, the Circuit Court decided, did not "tend to prove any liability of the company." If this was not the law of this case, by an unappealed ruling of the Court below, we could not support the contention in this case, because the act to be ratified must be held to be the act of an agent of the company, authorized to commit it; whereas it was the act of a State officer in the exercise of his common law powers, and not executing the orders of the appellee. The view we have taken of the case renders it unnecessary for us to review the prayers *seriatim*, to the granting of which exception was taken. Their theory was baseless, and the case should have been withdrawn from the jury. For the failure to so rule, the judgment must be reversed, without awarding a new trial.

*Judgment reversed, without remand for new trial.*

(Decided 18th June, 1890.)