San Antonio & Aransas Pass Railway Company v. Moody Griffin.

Decided December 21, 1898.

**1. Joinder of Actions—False Imprisonment—Malicious Prosecution.**

Actions for false imprisonment and for malicious prosecution may be joined where the parties are the same and the causes grow out of one continuous transaction.

**2. False Imprisonment—Damages—Evidence.**

In an action for damages from imprisonment on a false charge made by defendant, plaintiff may give evidence as to his treatment while in confinement, at the hands of the public authorities, as bearing on the amount of damages.

**3. Agent—Scope of Authority—Arrest—Promise.**

An agent employed to procure evidence against and secure the arrest and conviction of one suspected of theft from the principal, acts within the scope of his authority in undertaking, after such arrest, to give notice thereof to the person's friends and family.

**4. Same—Efforts to Prevent Bail.**

Such agent is acting within his employment where he endeavors to induce the bondsmen of the arrested party to surrender him into custody.

5. **Charge—Undisputed Evidence.**

The court, where the evidence as to a fact is undisputed, may so instruct the jury.

6. **Evidence—Reputation for Honesty.**

Plaintiff, in a suit for malicious prosecution and false imprisonment upon a charge of embezzlement, may offer evidence of his general reputation for honesty.

7. **Arrest.**

An officer has no authority to arrest without warrant on the charge of embezzlement of property to the value of one dollar, though committed in his presence. (Code Crim. Proc., arts. 230, 247, 248, 249; Ordinances of City of Waco, art. 483.)

8. **Same—Charge—Harmless Error.**

An instruction that the offense was not one committed in the presence of the officer, if erroneous, was harmless, where the arrest was upon a charge for which arrest without warrant was forbidden had it been so committed.

9. **Charge—Malice—Probable Cause.**

A charge that malice may be inferred from want of probable cause does not require the jury to so infer. But the jury should, it seems, be left to draw the inferences without instruction.

10. **Charge.**

Instructions embraced in the general charge need not be repeated on request.

11. **Same.**

It is improper to instruct the jury upon a given hypothesis to find for defendant, where a verdict for plaintiff might be warranted upon another hypothesis.

12. **Same—Findings on Issues Separated.**

The jury may find a general verdict against defendant, though separate issues as to his liability are involved, and it is not reversible error to fail to find separately upon the issues, though instructed to do so.

APPEAL from McLennan. Tried below before Hon. SAM R. SCOTT.

*A. W. Houston* and *W. S. Baker*, for appellant.

*Cunningham, Cunningham & McCollum*, for appellee.

COLLARD, ASSOCIATE JUSTICE.—The appellee, Moody Griffin, on the 8th day of February, 1896, brought this suit against the San Antonio & Aransas Pass Railway Company, the appellant, for false imprisonment and malicious prosecution, alleging that appellant, by its agent, Chas. F. Murphy, on or about the 28th day of December, 1895, unlawfully, maliciously, and without probable cause arrested and prosecuted appellee for theft and embezzlement of appellant's coal, and caused him to be imprisoned in the county jail of McLennan County, to his actual damage $5000 and exemplary damages $15,000. Defendant below specially excepted to the petition, because the action of false imprisonment could not be joined with an action for malicious prosecution; and this misjoinder was also pleaded by special plea. It also answered by general denial, and specially, that, about the 28th day of December, 1895, long prior thereto and since, it kept a large quantity of coal on hand in its yards at the city of Waco, and about that date, prior thereto, and continuously its coal gradually disappeared, and it was notified by letter that Moody Griffin was misappropriating its coal. Thereupon, it sent Chas. F. Murphy to

watch its coal and to apprehend the person or persons misappropriating the same, and have them lawfully arrested and prosecuted under the law.

The trial resulted in a verdict and judgment for plaintiff for $600.

We find the facts as follows: The company was losing coal from its yards in Waco, placed there in cars, and it suspected Moody Griffin of the theft or embezzlement of the same because of anonymous letters from parties that such was the fact. It employed Chas. Murphy, a resident of San Antonio, to go to Waco, and, if he found that Griffin was stealing its coal, to arrest him, or any person found stealing the defendant's coal. He was appointed special police by the mayor of the city of Waco, without salary, and set to watch defendant's yards for the purpose of detecting persons stealing the coal; but the company paid him, and he was in the company's employ, thus acting.

The plaintiff, Moody Griffin, was an employe of the company, a hostler at Waco, helping to fire the switch engine and to coal engines and take care of the engines at night. It was his duty to heave the coal from the cars into the tender of engines and supply them. He worked at night.

Murphy watched plaintiff, as directed by the company. On December 28, 1895, Murphy set a trap to watch Griffin misappropriating the defendant's coal. In the night time of the 28th of December, 1895, he sent one Gus Giddings to buy coal from Moody Griffin. We quote a part of the testimony of Murphy, and find the facts stated are true, as follows:

"I saw the negro (Gus Giddings) go over from where I was standing. I was standing at the end of the house in which Griffin had his fire, about fifty or seventy-five yards from where the coal cars and engine stood. There were three men standing there. I saw the negro leave the car with a sack of coal, go out, and over to First Street. I ran across a vacant lot out on First Street to where the negro Giddings had the sack of coal in his wagon. I told him to get in and drive back to Burke's alley. I met Jim Pettigrew, a policeman. He then gave the wagon and coal in charge to a couple of negroes, while he and I and Giddings went over to the coal cars. On arriving there we found one negro man standing up against the engine, who gave his name as Chas. McCuen. I then went down to the house where Griffin had his fire and rapped on the door. He said 'Come in.' I walked in the house. Griffin was standing by the fire. I told him that I had come to arrest him. He asked for what, and I told him for disposing of the company's coal. He said he never done it. I took him to where the policeman was, and we all started over to Mr. Smith's house, who is foreman of that department, so as to send another man to take Griffin's place. * * * I was working for defendant when I arrested plaintiff. The defendant instructed me to go to Waco and watch the coal cars and bins, and if I found the plaintiff was stealing their coal, for me to arrest him. * * * I was present at the trial of plaintiff, when he was tried in the County Court at Waco, on February 1, 1896. I testified against him as a witness on that trial. I was at the time at work for defendant and paid by it. I was employed by defendant to stay at Waco and testify against Moody Griffin in the trial mentioned.

I was fulfilling my duty and carrying out the terms of my employment with defendant by staying at Waco and prosecuting Moody Griffin in said trial. The only instructions I received while the case was pending against plaintiff in the County Court were to remain until after the trial was over. I am commissioned as special policeman without salary."

We find the following facts in the language of plaintiff, as a witness, to be true: "Murphy took me to the city hall after the arrest. He had no warrant of arrest. From the city hall they took and put me in jail with a lot of prisoners there; I think there were sixteen or eighteen white men in the cell where I was put. They were charged with violating the law. There was a crazy man in the cell where I was first put, but I got in another cell away from him."

The arrest was made on Saturday night, and it was 10 o'clock Sunday morning before plaintiff's friends came to see him, and bonded him out, which bond was dated December 29, 1895. He was released, and was re-arrested by the deputy sheriff on the following Monday evening, who had a warrant for that purpose, the first warrant served on plaintiff. Plaintiff made another bond on same day and was again released. Information was filed in the County Court the 6th day of January, 1896, upon the written affidavit of Murphy, charging plaintiff with theft of one sack of coal of the value of one dollar, alleged to be the property of Chas. F. Murphy, on the 28th of December, 1895. That case was dismissed.

Another information was filed in the County Court upon the affidavit of S. J. Smith, made on the 1st day of February, 1896, charging plaintiff with embezzlement of "a lot of coal belonging to the defendant company." Upon trial upon the last information, plaintiff was acquitted. Murphy appeared as a witness against plaintiff on the trial, and he was prosecuted by attorneys of defendant company.

Plaintiff was, immediately after his arrest, discharged from the service of the defendant, and has been able to procure but little work since. He was in good health when arrested; his imprisonment affected him so that he could not sleep at night, he was taken sick with a cough and had pains in his back and shoulder, caused by lying on the cold floor in jail. Was taken sick the Wednesday following his arrest.

The verdict of the jury is in the following form: "We, the jury, find for the plaintiff four hundred dollars exemplary damages and two hundred dollars actual damages for illegal arrest and prosecution;" and judgment was rendered for him for six hundred dollars, from which the defendant has appealed.

*Opinion.*—Appellant, by assignment, insists that the court below erred in overruling its pleas and exceptions "to misjoinder of actions, because false imprisonment and malicious prosecution constitute distinct and separate causes of action."

The two causes of action were properly joined, since the parties plaintiff and defendant are the same, and both the causes of action grew out of one continuous transaction. It is a rule in this State that where a

party can enforce his right in one action, he ought not be permitted to resort to several actions. Pitts v. Ennis & Reynolds, Admrs., 1 Texas, 604; Walcott v. Henrick, 6 Texas, 415; Railway v. Graves, 50 Texas, 202. The objection of multifariousness should not be sustained. Our system is liberal in this respect, and is not governed by common law forms of action. Herring v. Mason, 17 Texas Civ. App., 559, and authorities cited; Hill v. Osborne, 60 Texas, 390; Harris v. Warlick, 42 S. W. Rep., 356.

Appellant next insists that the court erred in allowing plaintiff to testify as to his treatment in jail, and in refusing to charge the jury, as requested, that in no event would defendant be liable for damages sustained by plaintiff by imprisonment in the jail and discomforts while so incarcerated.

The testimony was pertinent, and the charge was correctly refused. The damages resulting are not too remote. They are recoverable. "Compensation may be recovered for injury to person by being imprisoned upon defendant's charge, such as injury to health. So compensation may be recovered for being rendered insane by the imprisonment, and for physical suffering, caused by cold, want of a bed, and deprivation of food." Sedg. on Dam., sec. 457. The author cited also says that compensation may be recovered for the bodily and mental suffering caused by the imprisonment, and for the indignity; and "evidence may be given of the circumstances of plaintiff's family and of the filthy condition of the jail, as bearing on the mental suffering resulting from the imprisonment." Sedg. on Dam., sec. 442. These rules are elementary, and are applied as well where the imprisonment is at the instance of a private person as that of an officer who makes an illegal arrest and holds the prisoner in custody.

Appellant next asserts that the court erred in permitting plaintiff to testify: "I spoke to Murphy that night (after the arrest) about notifying my friends. I had my check, and asked him if he would please carry that to my wife and tell her where I was. He said he would see that it went to her. My wife did not come to see me. The arrest was made Saturday night. The first time my friends came to see me was Sunday morning, about 10 o'clock."

It is urged that the promise of Murphy was beyond the scope of his authority. The assignment is not well taken. Murphy was there on the ground; he made the arrest under direction of the company, and while still acting for it, made the promise to inform plaintiff's wife of his arrest. The object of the request is obvious—to result in some amelioration of plaintiff's condition. It is true, defendant was not present to authorize Murphy to comply with the reasonable request of the plaintiff; but every particular word spoken or act done by an agent need not be specially authorized by the principal in carrying out the will of his principal, to make it the word or act of the principal. If it be in the purview of the main purpose, it is sufficient. Murphy was representing the defendant in the affair of the arrest and confinement of plaintiff, and his principal would be responsible for his acts while so acting. If Murphy

had done anything to add to the comfort of plaintiff while he was in jail, as to have him placed in handsome apartments, accommodated with fire, lights, and a good bed, it would have been received in mitigation of damages; and so inversely, if he did anything to add to his sufferings while imprisoned, it would be admissible in aggravation of damages. Defendant put its agent in charge of the matter of the arrest of plaintiff, and it was responsible for what he did in carrying out the main design. It is a too refined idea for application in such affairs to release defendant from liability, when it appears that its agent, when complying with its direction to arrest and prosecute plaintiff, said and did things in the performance of his employment which he was not specially authorized to say or do. The company clothed him with the authority to arrest and prosecute plaintiff; and, necessarily, gave him discretion to carry out his instructions in his own way, and it would be responsible for his methods in obeying them. He decided to entrap plaintiff, by sending a man to him to buy coal and kept him in its service to prosecute him to conviction. The company would not be absolved from liability, because it had not specially authorized him to adopt the method he did adopt; nor would it be absolved from his acts making plaintiff's incarceration oppresive. It was to the interest of defendant to compel plaintiff to plead guilty.

The same may be said with equal, if not more force, as to his efforts to have the sureties on plaintiff's bond surrender him into custody. And there was no error in admitting testimony to show such facts. It was not error to instruct the jury that the undisputed evidence showed that Murphy was the agent of defendant in arresting and prosecuting plaintiff. The evidence is undisputed. He was sent to Waco for that purpose. After the arrest Murphy was still retained in the service of defendant to prosecute and convict plaintiff; and there is no evidence controverting the fact. It was, therefore, not error to refuse an instruction, asked by defendant, to the effect that it would not be liable for acts of its agent done beyond the scope of his authority. There is no evidence that he did so act beyond the scope of his authority.

It was not error to allow plaintiff to put his general reputation for honesty in issue by proof. Besides this, defendant offered testimony intended to show that plaintiff was guilty of the crime of embezzling its coal. He had the right, in such case, to prove his general reputation, as to honesty, in rebuttal.

The court instructed the jury that the alleged offense was not committed in the presence of Murphy. Appellant complains of this, and says it was upon the weight of evidence. This question was immaterial, because, as was elsewhere charged, the arrest was illegal. If it had been true that the alleged offense was committed in the presence of the officer, he would not have been justified in making the arrest without warrant. There was an ordinance of the city of Waco, read in evidence by defendant, which we should have set out before, but we insert it now, and find it as a fact, as follows:

"Art. 483. The city marshal, or deputy, or any policeman, shall arrest any person or persons, without warrant, found in suspicious places within this city, and under circumstances which reasonably show that such person or persons have been guilty of some felony, or breach of the peace, or threaten or are about to commit some offense against the laws of the State or ordinance of the city of Waco."

Under this ordinance, an arrest could not be made without warrant, unless under circumstances which reasonably show that the person arrested had been guilty of some felony or breach of the peace; or *threatened* to commit some offense against the laws of the State or ordinance of the city. It is not pretended that plaintiff had committed any felony; nor does it appear that he was threatening to commit any offense. He was arrested on the ground that he had committed the offense of theft or embezzlement of personal property, of the value of one dollar, which offense would not be a felony. There was then no authority to make the arrest without warrant, under the ordinance.

If plaintiff committed the offense alleged, in the presence of Murphy, it was not such an offense as gave him, either as peace officer or an individual, the right to arrest plaintiff without warrant.

The statute prescribes that "a peace officer, or any other person, may, without warrant, arrest an offender, when the offense is committed in his presence or within his view," if the offense is one classed as felony, or as an "offense against the public peace." Rev. Stats., Code Crim. Proc., art. 247.

The statute also provides that a peace officer may arrest, without warrant, when a felony has been committed within the presence or within the view of a magistrate, and such magistrate shall verbally order the arrest of the offender. Rev. Stats., Code Crim. Proc., art. 248.

Municipal authorities of towns and cities may establish rules authorizing arrest without warrant of persons found in suspicious places, and under circumstances which reasonably show that such person has been guilty of some felony or breach of the peace, or threatens, or is about to commit some offense against the laws. Rev. Stats., Code Crim. Proc., art. 249.

It is also permissible for a peace officer to make an arrest without warrant, when it is shown by satisfactory proof upon representation of a credible person, that a felony has been committed, and that the offender is about to escape, so that there is no time to procure a warrant. Rev. Stats., Code Crim. Proc., art. 230.

It is shown by the foregoing, that if plaintiff committed any offense at all, it was not one for which he could be arrested without warrant, by a peace officer, or any other person. Consequently his arrest was illegal, and it was wholly immaterial whether it was committed in the presence of Murphy or not. The error complained of in the charge, that the offense was not committed in the officer's presence, was harmless. The court did charge that the arrest was illegal, and it was. There was no error in that.

The next assignment of error to be noticed is: "The court erred in charging the jury that the malice necessary to be shown in cases of malicious prosecution, might be inferred from the want of probable cause, because malice is not inferred as a necessary consequence from the clearest proof of probable cause; but malice and probable cause must concur and must be proven, and malice may only be inferred from facts and circumstances."

The reason assigned for the alleged error in the charge is not applicable. The court did not charge that malice would necessarily be inferred from the want of probable cause, but that it may be. The supposed error, then, does not exist. While it may be true that where there is no probable cause, a jury might infer malice; yet it might not be proper to so instruct the jury, as it would be a direction as to the force of the evidence. The jury should be left to their own reasoning in determining the effect of the evidence. Malice and probable cause must both concur to sustain a suit for malicious prosecution. If, however, there was error in the charge, it was not assigned.

The court did distinctly charge the jury, that before plaintiff could recover on the averments of malicious prosecution, he must show by a preponderance of the testimony that the prosecution was prompted by malice, and without any probable cause for so doing, and that the prosecution was at an end. This was correct, and it was not necessary for the court to give the same instruction as to malice and probable cause, requested by the defendant.

The seventeenth assignment of error is that the court erred in refusing special instructions to the effect that if plaintiff committed the offense of theft or embezzlement of defendant's coal, as alleged, in the presence and within the view of the police officer, Murphy, and he arrested him in a reasonable time, you will find for defendants. We have already seen that the principle stated in the requested charge is not correct. Besides this, though the arrest may have been legal, the issue as to malicious prosecution would remain, and it would not be correct to instruct the jury to find for defendant, in case they should find the arrest legal.

The following charge requested by defendant was refused: "That so far as any exemplary damages claimed by plaintiff, you will find for defendant." It was not error to refuse to so instruct the jury peremptorily to find for defendant on the subject of exemplary damages. The evidence warranted a charge upon exemplary damages.

There is no testimony to the effect that Murphy was acting upon his own responsibility in arresting plaintiff; and hence, it was correct to refuse to submit such an issue. The requested charge is also erroneous, because it required a verdict for defendant, in case the jury should find that Murphy acted upon his own responsibility in making the arrest, ignoring the issue of malicious prosecution.

The court directed the jury to find separately upon the issues of false imprisonment and malicious prosecution. The jury did not comply with

this direction, but returned a verdict for damages upon both branches of the case together.

The charge so directing the jury to find separately on the two issues was not necessary, and it was not reversible error for the jury to disregard it.

We have examined all the assignments of error presented in appellant's brief, and find that none of them ought to be sustained.

The judgment of the lower court is sustained.

*Affirmed.*

Writ of error refused.