FOSTER *v.* GRAND RAPIDS RAILWAY CO.

1. MASTER AND SERVANT—STREET RAILWAYS—CARRIERS—ASSAULT
ON PASSENGER—SPECIAL OFFICERS—LIABILITY OF EMPLOYER.
   Where a special deputy sheriff, paid by a street-railway com-
   pany, acts solely in his capacity as an officer in assaulting a
   passenger, and not by the direction of the conductor in
   charge of the car, the street-railway company is not responsi-
   ble for the act.[1]

2. SAME—PRESUMPTION.
   When a disorderly person is arrested by a police officer, the
   presumption is that the officer is acting in an official capacity,
   and not as an agent for the party who by law is required to
   pay him.

3. SAME—REPRESENTATION OF PUBLIC.
   Where a special deputy sheriff, who was paid by a street-rail-
   way company, and whose duty it was to preserve order at a
   resort owned by the company, and ride upon the cars and
   prevent disturbances, assaulted a passenger on a car in assist-
   ing the conductor to eject him for nonpayment of fare, the
   officer, in so doing, represented not the public, but his em-
   ployer, and the street railway company was liable.

Error to superior court of Grand Rapids; Newnham, J.
Submitted April 4, 1905. (Docket No. 2.) Decided July
21, 1905.

Case by Adam Foster against the Grand Rapids Rail-
way company for personal injuries. There was judgment
for plaintiff, and defendant brings error. Affirmed.

Plaintiff claims damages for an assault while a passenger
on defendant's road. He, with four companions, includ-
ing his wife, had spent the evening at a beer hall at Reed's
Lake, near Grand Rapids, drinking beer and watching a

---

[1] As to liability of carrier for assault upon passenger by third per-
son, see note to *Fewings* v. *Mendenhall* (Minn.), 55 L. R. A. 713.

vaudeville performance. This resort is owned by the defendant. The party drank considerable beer, and when they started for home plaintiff was evidently somewhat under the influence of liquor. They boarded the car for their return to the city about 11:15 p. m. The three women of the party went to the forward end of the car and took seats. Plaintiff and his friend named Duckett, went to the back end. Plaintiff offered the conductor a coin in payment of the fares for the party. The conductor refused to take it, because he was not ready, not having turned the register back to the zero mark. After turning back the register, which was at the front end of the car, he commenced collecting fares. Plaintiff followed the conductor part way up the aisle and offered the fares again, but was refused for the same reason. Plaintiff testified that he pulled out of his pocket a coin, which he supposed was a quarter, and that the conductor put it in his pocket and then handed back a quarter, and that the plaintiff had thereupon concluded that it must have been a 50-cent piece which he handed the conductor. He later found the 50-cent piece in his pocket. He then discovered that he had paid no fare. On reaching the back platform, the conductor asked plaintiff for his fare. Plaintiff testified that he told the conductor that the fare was paid. The conductor testified that the plaintiff said he had made a tender. Mr. Duckett then twice offered to pay the fares for the party, but plaintiff pushed his hand aside. Plaintiff testified that the conductor then said to some one, "Put him off," that immediately afterwards he was struck over the head by some one, and an altercation then ensued, in which he was seriously injured. The assault, if any, was made by one Shinski, an employé of the company, but who for several seasons had been appointed a deputy sheriff to preserve order at defendant's resort. Shinski testified that his duties were to watch the park in the evening, and stay around the car landing, and, in case of a "rough load" of passengers, to go in on the cars to preserve order. Except when employed as a special deputy sheriff during the sum-

mer season, he was a motorman in defendant's employ. The theory of the plaintiff is that Shinski acted under the authority of the defendant, through its conductor, and that the defendant is responsible for the assault made by him. The theory of the defendant is that Shinski was acting in the capacity of a peace officer, that a disturbance had arisen, and that Mr. Shinski and his brother officer, Fallon, who was also a deputy sheriff, had, without any direction whatever from the conductor, united in an attempt to restore order. These two theories were stated to the jury by the court, and a verdict rendered for the plaintiff.

*Knappen, Kleinhans & Knappen* (*Willard Kingsley,* of counsel), for appellant.

*John W. Powers* (*Myron H. Walker,* of counsel), for appellee.

GRANT, J. (*after stating the facts*). Counsel for the defendant preferred the two following requests:

"If there were no angry words spoken in the rear vestibule between Mr. Shinski and Mr. Foster, and if there were no angry words between the conductor and Mr. Foster, and everything had been gentlemanly and quiet up to the time that Mr. Foster claims he was hit on the head, and if you find that Shinski, as a special deputy sheriff, hit him on the head with his billy suddenly, without any direction from the conductor to do so, then the railway company would not be liable for that blow."

"It appears by the undisputed testimony in the case that Shinski and Fallon were special deputy sheriffs, and although they were paid by the railway company, yet that company could neither appoint nor remove them from office; and if you find as a fact, from the evidence in the case, that these officers, or either of them, committed any assault on Mr. Foster, either on the car or on the ground, while they were in the discharge of their official duties, without any directions to do so from the conductor, then the company would not be liable for such assault, or any injuries resulting therefrom."

These were refused, and the court instructed the jury that:

" If the defendant's servant, Shinski, struck the plaintiff substantially in the manner and under the circumstances narrated by the plaintiff and his witnesses, and while engaged in trying to eject plaintiff from the car, under the instruction of the conductor, said action on his part was unwarranted, and the defendant would not be liable therefor.   *   *   *

" Mr. Shinski, by virtue of being a special deputy sheriff, was a peace officer, and if a breach of the peace by Mr. Foster had occurred, or was immediately imminent, in the presence of the officer, he had the right to stop or prevent such breach of the peace; and if the officer, to accomplish that purpose, used excessive violence, by using his billy or otherwise, the railway company would not be responsible for such acts of the officer."

The court further instructed the jury:

" The railway company is not liable for any assault that was committed upon Mr. Foster after he left the car and was on the ground, by either of the officers, or by the conductor or the motorman, or any of the employés of the railway company, even though such assault was willful and malicious."

Police protection is essential in places of resort like this, visited by large crowds composed of all classes of society. They are apt to be visited by vicious and lawless elements, and by those addicted to the excessive use of intoxicating liquors. Especially is this true of pleasure resorts of this character open at night. The defendant is largely responsible for the necessity for police protection, because it brings the crowds there, and is perhaps responsible for the means of amusements and entertainments. Many instances are therefore found in law books where the public authorities have appointed police officers to preserve order in these places, but at the expense of those responsible for them. So the public authorities in the present case appointed deputy sheriffs, with the same powers and duties as they would exercise in any other place. When acting purely in their capacity as police officers, the defendant is

not responsible for their acts.   Only when the defendant, through its authorized agent, has employed or directed such police officers to act for it, does it become responsible. It was the duty and custom of these police officers to preserve order in and around the pleasure grounds, to arrest those engaged in violations of law, and to accompany the street car from the grounds to the city when there were indications that there were rough persons aboard liable to cause disturbance.   If this police officer acted, in his alleged attack upon the plaintiff, solely in his capacity as an officer, and not by and under the direction of the conductor of the car, the defendant is not responsible for his act.

When a disorderly person is arrested by a police officer, the presumption is that the officer is acting in an official capacity, and not as an agent for the party who by law is required to pay him.   *Jardine* v. *Cornell*, 50 N. J. Law, 485.

We do not think these requests are justified by this record.   As a peace officer, Shinski's sole duty was to preserve the peace, and to arrest those who were engaged in a breach thereof.   It was not a part of his duty to the public to assist in the removal of passengers who refused to pay their fares, unless the removal was accompanied by such disturbance and violence as to amount to an actual or threatened breach of the peace.   Neither under the plaintiff's nor the defendant's testimony was there any disturbance before the assault was made.   The car had not stopped, and the court correctly instructed the jury that the defendant's servants had no authority to remove plaintiff from the car until it had stopped.   Plaintiff had not refused to leave the car for nonpayment of fare.   Under the defendant's own showing, all that had been done prior to the seizure of plaintiff by Shinski was the demand for fare, the assertion by plaintiff that he had either tendered or paid the fare, and the statement by the conductor that he would have to pay his fare or get off.   A brief state-

ment of the testimony of the conductor and Mr. Shinski upon this point is important:

The conductor, after testifying that he had asked plaintiff for the fares, and that plaintiff replied that he had made a tender of the money and that the fares were paid, testified as follows:

" *Q.* Then what took place next?

" *A.* Why, I told the man, if he didn't pay his fare, I would put him off, and I took him, put my hand on the man's shoulder after asking him the third time, told him to pay his fare or I would put him off, and he didn't seem to think he would pay his fare, so Mr. Shinski stood there, and Mr. Shinski took hold of him himself. * * *

" *Q.* When Mr. Shinski took hold of him, what took place?

" *A.* Mr. Shinski took hold of him by the throat and pushed him in the corner. He says, ' You pay your fare or I will put you off.' "

Mr. Shinski, after testifying to the conversation between plaintiff and the conductor, and Mr. Duckett's offer to pay, when his arm was pushed aside by the plaintiff, testified as follows:

" So, I turned around. I stood right side of him, and faced him, in front of him. I says, ' Now, you have to pay.' I says, ' It has been asked enough.' So I got hold of his right arm. I says, ' Step off, please.'

" *Q.* Whose arm?

" *A.* Mr. Duckett's. * * * So the other man—he was right behind him—he jumped up to me. He says: ' What have you got to say? (using a vile epithet). And I grabbed him. I says, ' I have got a good deal to say." I says, ' I will have a good deal to say.' "

Mr. Shinski then testified to seizing plaintiff by the throat and pushing him up in the corner. When Mr. Fallon, another special deputy sheriff, who was on the car behind, came up, plaintiff testified that Mr. Shinski told Mr. Fallon : " These people refuse to pay fares, and we want them off."

On cross-examination Mr. Shinski testified that before he interfered—

"The conductor asked me, 'What are we going to do?' I says, 'You know what to do.'

"*Q.* The conductor asked you what to do?

"*A.* Yes, sir.

"*Q.* What did you say to that?

"*A.* I told him what to do. I says, 'You are the conductor of this car.'"

He further testified:

"I asked both of them—plaintiff and Duckett—to pay their fares. 'As you have not paid your fares,' I says, 'this must be settled.' I spoke to both gentlemen. * * * After plaintiff called me that name, I let Mr. Duckett go, and got hold of him."

From Mr. Shinski's own testimony, and as well from that of the conductor, there was no attempt or intention to arrest plaintiff for a breach of the peace, but only to put him off the car for the nonpayment of his fare. The only reasonable conclusion from this testimony is that the conductor either expressly or impliedly called upon Shinski to assist him in ejecting the plaintiff, and that Mr. Shinski understood that to be a part of his duty. Under these circumstances Mr. Shinski did not, in his assault upon the plaintiff, represent the public, but the defendant. It was wholly immaterial whether any angry words were spoken before Mr. Shinski interfered, or whether the conduct of the parties up to that time had been gentlemanly and quiet.

Judgment affirmed.

MOORE, C. J., and CARPENTER, MCALVAY, and MONTGOMERY, JJ., concurred.