## SOUTHWESTERN PORTLAND CEMENT CO. v. REITZER.

(Court of Civil Appeals of Texas. Feb. 8, 1911. On Motion for Rehearing, March 8, 1911.)

1. TORTS (§ 15*) — DAMAGES — PROXIMATE CAUSE.

A wrongdoer is liable for such damages as naturally flow from the wrongful act, though he may not have anticipated at the time it was committed the ensuing damages; it being sufficient that he might have reasonably anticipated that some injury would in the natural order result.

[Ed. Note.—For other cases, see Torts, Cent. Dig. §§ 19–22; Dec. Dig. § 15.*]

2. FALSE IMPRISONMENT (§ 34*)—DAMAGES—PROXIMATE CAUSE.

Injuries that do not follow as a natural consequence of plaintiff's wrongful arrest cannot be recovered, though such injuries might not

have been inflicted, had it not been for the arrest and imprisonment.

[Ed. Note.—For other cases, see False Imprisonment, Cent. Dig. § 111; Dec. Dig. § 34.*].

3. FALSE IMPRISONMENT (§ 34*)—DAMAGES.

One wrongfully arrested and imprisoned may recover for damage ensuing from the condition of the jail.

[Ed. Note.—For other cases, see False Imprisonment, Cent. Dig. § 111; Dec. Dig. § 34.*]

4. FALSE IMPRISONMENT (§ 34*)—DAMAGES—MOCK TRIAL.

Plaintiff in an action for false imprisonment cannot recover damages for being subjected, while in jail, to a mock trial conducted by his fellow prisoners; there being no causal connection between the false arrest and such mock trial.

[Ed. Note.—For other cases, see False Imprisonment, Cent. Dig. § 111; Dec. Dig. § 34.*]

5. TRIAL (§ 194*)—INSTRUCTIONS — PRESUMPTIONS OF FACT.

In an action for false imprisonment, the court should not instruct that the law presumes that an officer having custody of a person will protect him in his lawful rights, since such presumption, if it exist, is a matter of fact, rather than of law.

[Ed. Note.—For other cases, see Trial, Dec. Dig. § 194.*]

6. EVIDENCE (§ 151*)—ADMISSIBILITY—CONDITION OF MIND.

In an action for false imprisonment, it appeared that plaintiff was arrested in the act of carrying away a box of tools, and on being asked by the officer whose tools they were answered, "Mine." Held, that plaintiff could not testify as to what was in his mind when he claimed the tools.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 440; Dec. Dig. § 151.*]

7. FALSE IMPRISONMENT (§ 40*) — INSTRUCTIONS.

In an action for false imprisonment, it appeared that plaintiff was arrested while carrying away a box of tools. There was no evidence that the tools in the box had been stolen, and certain tools that had been stolen had been recovered and had been in the possession of defendant's agents before the arrest was made, and were retained in defendant's possession and not carried with plaintiff to the magistrate. Held, that there was no evidence to authorize a charge embodying Code Cr. Proc. art. 364, providing that all persons have a right to prevent theft by seizing any personal property which has been stolen and bringing it, with the supposed offender, before a magistrate.

[Ed. Note.—For other cases, see False Imprisonment, Dec. Dig. § 40.*]

8. FALSE IMPRISONMENT (§ 7*)—ILLEGAL ARREST.

In an action for false imprisonment, it appeared that defendant's tools had been stolen from its premises, and that plaintiff was arrested, without a warrant, while in the act of carrying away a box of tools. There was no evidence that the tools in the box had been stolen, and the uncontroverted evidence showed that the tools stolen had been recovered and were in possession of defendant's agents before the arrest was made. Held, that the arrest and imprisonment were illegal.

[Ed. Note.—For other cases, see False Imprisonment, Cent. Dig. §§ 5–16; Dec. Dig. § 7.*]

9. MASTER AND SERVANT (§ 300*)—TORTS OF SERVANT—LIABILITY OF MASTER.

To render the master liable for the torts of his servant, it is, as a general rule, sufficient to show that he gave the servant authority, or

made it his duty, to act in respect to the business in which he was engaged when the wrong was committed, and that the act was done in the course of his employment.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1209; Dec. Dig. § 300.*]

10. FALSE IMPRISONMENT (§ 39*) — PERSONS LIABLE—EMPLOYERS—QUESTIONS FOR JURY.

Whether a wrongful arrest was by one as officer or as agent of defendant is ordinarily a question for the jury.

[Ed. Note.—For other cases, see False Imprisonment, Cent. Dig. § 116; Dec. Dig. § 39.*]

11. FALSE IMPRISONMENT (§ 15*) — PERSONS LIABLE—EMPLOYERS.

Where a wrongful arrest was made by a deputy sheriff who was employed by defendant as a watchman in a building which was being erected, such arrest was made in the capacity of defendant's servant, and not in his official capacity.

[Ed. Note.—For other cases, see False Imprisonment, Cent. Dig. § 62; Dec. Dig. § 15.*]

On Motion for Rehearing.

12. FALSE IMPRISONMENT (§ 34*)—DAMAGES.

Injuries by prisoners to one while illegally imprisoned are separate from those caused by the illegal arrest, and damages therefor cannot be recovered in an action for false imprisonment.

[Ed. Note.—For other cases, see False Imprisonment, Cent. Dig. § 111; Dec. Dig. § 34.*]

Appeal from District Court, El Paso County; James R. Harper, Judge.

Action by F. H. Reitzer against the Southwestern Portland Cement Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Richard F. Burges, for appellant. Brown & Terry and E. B. Elfers, for appellee.

NEILL, J. This suit was brought by appellee against appellant, a corporation, to recover $10,000 actual, and $5,000 exemplary, damages for an assault and false imprisonment.

The substance of plaintiff's petition is: That on May 11, 1909, while in the employ of defendant as a carpenter in the construction of a certain building, he was assaulted and placed under arrest by I. S. Malone, a watchman in the service of defendant, where the building was being erected; that such arrest was made without a warrant and by means of a drawn pistol, accompanied with a threat by Malone of bodily injury to plaintiff if he did not submit to it and accompany him; that Malone then took plaintiff to the county jail of El Paso county, where he was searched by him and the jailer, thrown in a filthy cell with a number of other prisoners, who immediately proceeded to put plaintiff through a "kangaroo" trial, and forcibly took what money he had from his person, subjecting him to other abuse and indignities which greatly humiliated and caused him great mental anguish. That such arrest and false imprisonment was without a warrant, illegal, and without probable cause; that he was confined in jail three or four hours, without

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

a complaint being filed against him or his being taken before a magistrate, as is required by law; that said acts of Malone were done for the defendant while he was in its service, and were in the scope of his employment; that said acts of defendant, done through its said agent and servant, were willful, wanton, and malicious, and were done with the express purpose and intention of injuring plaintiff, with its knowledge and under its instructions.

The defendant specially excepted to that part of the petition which alleges that plaintiff was placed upon a mock trial by the prisoners in the county jail, upon the ground that it was irrelevant and not material to any issue in the case. Its answer contains a general denial, a special denial of its authorization of Malone to make the arrest, averring that he was a deputy sheriff of El Paso county, and what he did to plaintiff was done in his official capacity, and not by its order or authority. It then pleaded that it had requested Malone to keep diligent watch to discover who had stolen certain tools and implements from its servants engaged in constructing its cement works, who, prior to plaintiff's arrest, had frequently complained to its agents that their tools had been stolen from their chests; that, it having been called to its attention that certain of the tools taken from its employés were in a certain box, Malone was requested to keep a lookout to ascertain who claimed the box containing such tools; that, in pursuance of such instructions, he did keep such lookout, and detected plaintiff carrying off the chest, and that, upon Malone's asking him whose tools it contained, and upon plaintiff's answering that they belonged to him, Malone, finding plaintiff in possession of such tools, believing and having reason to believe that he had stolen them, arrested him while in the act of carrying them off; that such action was taken solely for the purpose of protecting defendant's employés from theft of their tools, and was done without malice or intent to injure or harass plaintiff or any one else, but solely for the purpose stated. The special exception to plaintiff's petition above referred to was presented to and overruled by the court, and the case was then tried before a jury, which resulted in a judgment in plaintiff's favor for $250.

The first assignment of error assails the action of the court in overruling the special exception above mentioned to plaintiff's petition; and the fifth, of its refusal to instruct the jury at defendant's request, that if Malone placed plaintiff in custody of the jailer, and he was thereafter placed upon a "kangaroo" trial by the inmates of the county jail without defendant's or its officers' or agents' knowledge, not to consider the fact of such mock trial, nor the circumstances connected with it, in arriving at a verdict. As the two assignments are cognate and involve the same principle of law, they will be considered together. Such damages are only recoverable for a tort as naturally flow from its commission. If they flow from an actionable wrong as its natural sequence in a continuous, unbroken current, the wrongdoer is liable for them, though he may not have anticipated at the time it was committed the ensuing damages as its natural consequence. It is sufficient if he might have reasonably anticipated that some injury would in the natural order of things be its resultant, though he may not have contemplated that the injury actually caused would flow from his wrongdoing. The defendant, if, in acting through its agent, it wrongfully arrested and imprisoned the plaintiff, must be deemed to have contemplated the consequences of such unlawful acts, and be held liable to plaintiff for such injuries as naturally flowed from them. But such an injury as did not flow through the natural current, starting from the wrong as its source, although it might not have been inflicted had it not been for the unlawful arrest and imprisonment, cannot be regarded as a natural consequence of defendant's tortious acts; and hence it cannot be taken and considered as an element of damages in the case. If the arrest and imprisonment of plaintiff were by defendant, and are acts for which it is responsible, it is liable for such damages as naturally flowed from them. It may be said, and it has been so held, that, if the jail in which defendant's agent cast plaintiff was filthy and dirty, and any damage to him ensued from its condition, such damages naturally flowed from the act of his being imprisoned, then the defendant should, for that reason, be held liable for them. Fenelon v. Butts, 53 Wis. 344, 10 N. W. 501; Sutherland on Damages, § 1257.

But can it logically be deduced from plaintiff's being subjected, while in jail, to a mock trial conducted by his fellow prisoners that the damages which may have ensued from such a proceeding naturally flowed from defendant's alleged wrongful act of throwing him in jail, unless it be shown that its agent knew or had reason to know at the time that he might be subjected to such indignities? We think not. The "kangaroo" trial was outside of and beyond the natural current which had its origin in and flowed from defendant's alleged wrong. It came between and broke the flow of the stream which emanated from the supposed wrong done the plaintiff by the defendant, and was itself the parent of any injury it caused, for there was no proximity or causal connection between the alleged wrongful act of the defendant and the mock trial; their sources and flow being of different origin and through different channels.

In our opinion the special exception to that part of plaintiff's petition to which it was addressed should have been sustained. Inasmuch as it was overruled and evidence heard which tended to sustain such allega-

tions, the substance of the special charge requested upon the subject should have been given the jury. We say its substance, because we do not think it should have been adorned with the sentence: "The law presumes that an officer having the custody of a prisoner will protect him in his lawful rights." If there be any such presumption, it is of fact, rather than of law, and such as is rarely asserted, except for the purpose of saving an officer from the consequences of an unauthorized act. It is, in effect, an official ornament thrown out as a shield to protect the officer from the consequences of his own ignorance, inefficiency, or a breach of duty. Every officer should be grateful that the law in its charity has furnished him such a shield, and should wear it with beseeming modesty, never mistaking it for the hilt of a sword to be used in depriving a citizen of his legal rights.

The evidence tends to show that a box on defendant's premises was supposed by its watchman, Malone, to contain tools of its employés which had been stolen by some one, and that it was Malone's duty to detect and catch the thief; that on the morning of the arrest, plaintiff, in the presence of the watchman, took up and started off with the box, and that Malone then asked him whose tools they were, and that he answered, "Mine." Whereupon, inferring from his answer and other circumstances that plaintiff was the thief, Malone immediately arrested him. Plaintiff was then, on redirect examination by his counsel, asked this question: "You said on cross-examination that the second time you picked up that box Malone asked you whose tools they were, and you said, 'Mine.' What did you mean by that?" To which question defendant excepted, on the ground that what the witness had in mind, but did not communicate to Malone, was not material. The exception was overruled, and the witness answered, "They were mine while in my charge." The defendant then excepted to the answer, as well as the question, and moved the court to strike them from the record, for the reason that what was in plaintiff's mind, and not stated to Malone, was irrelevant and immaterial. The court overruled the exception, and its ruling is the predicate for the third assignment of error.

If, as the evidence tends to show, Malone had no right, either as an officer or as the agent of the defendant, to make the arrest, it could make no difference, as to his act in making it, what was in plaintiff's mind when he told Malone that the tools in the box were his. For whatever might have been the state of plaintiff's mind, the arrest would still have been unjustifiable. But, viewed from Malone's standpoint, if, upon plaintiff's claiming the tools as his own, Malone thought they had been stolen and thought it his legal duty to arrest the plaintiff while in the act of carrying them off, and did arrest him under such belief, the circumstances under which such arrest was made could be given in evidence and considered in mitigation of damages, regardless of what was in plaintiff's mind at the time he claimed the tools as his; and the testimony of plaintiff, to the effect that the state of his mind was different from what the clear import of his language, in claiming the tools, evinced it to be, was irrelevant to such an issue, and should not have been permitted to be introduced.

The defendant asked a special charge embodying article 364 of the Code of Criminal Procedure, and its refusal is the subject of the sixth assignment. The testimony of defendant's watchman, Malone, shows conclusively: That the provisions of the article referred to offer no justification for plaintiff's arrest and imprisonment. His testimony is to the effect that missing tools, supposed to have been stolen, had been discovered in the box by defendant's foreman, Classon, who carried it with its contents into the company's storehouse the evening before the arrest was made, and said to him (Malone): "I want you to be here to-morrow morning early, before the men come to work, and arrest the man that gets that tool box and claims those tools in there." That he, witness, was there bright and early next morning, when plaintiff came in and picked up a pair of overalls from the box and picked up the tool box, put it on his shoulder, and started out with it. That he then walked up to plaintiff, and said, "Excuse me, please, but do you claim this as yours? He says, 'I do.' I says, 'Consider yourself under arrest.' He says, 'For what?' and I says, 'For theft of tools.' He says, 'No, sir.' 'I don't need any warrant for your arrest, for I saw you making off with the tools.' He says then, 'Well, wait till I take my box over to my friends.' I says, 'No, just leave the box of tools in the storeroom; they will be all right there.' So I took the box and set it down in the storeroom, and then brought him to town. Before I got to the street car line, * * * he claimed that he had borrowed all the tools he had in that box." There was no evidence to support the theory that the tools in the box had been stolen. If, however, it should be conceded that there were such evidence, the uncontroverted testimony shows that they had been recovered and were in the possession of defendant's agents before the arrest was made; that when it was made the tools were retained in defendant's possession, and, instead of being carried with plaintiff before the nearest magistrate, as the statute sought to be invoked requires, plaintiff was carried to and imprisoned in the county jail   Hence the article embodied in the special charge was inapplicable and the requested charge rightfully refused.

The court instructed the jury that the arrest and imprisonment of the plaintiff were unlawful; that such illegal acts were the

acts of defendant, and directed the jury to find for the plaintiff. Such instructions form the basis of the eighth assignment of error. We are clearly of the opinion that it appears, as a matter of law, from the undisputed evidence that plaintiff's arrest and imprisonment were illegal, and that the court rightfully so instructed the jury. But we are not so clear as to its peremptory direction of a verdict against the defendant for the damages sustained in consequence. In view of another trial, we will endeavor to expose the law in its application to the evidence upon this question.

To render the master liable for the tortious acts of his servant, it is, as a general rule, sufficient to show that he gave to the servant authority, or made it his duty, to act in respect to the business in which he was engaged when the wrong was committed, and that complained of was done in the course of his employment. In such a case the master will be deemed to have consented to and authorized the act of the servant, and will not be relieved of liability, although the servant abused his authority, or was reckless in the performance of his duty, or inflicted an unnecessary injury in executing his master's orders. T. & M. Ry. v. Dean, 98 Tex. 519, 85 S. W. 1135; I. & G. N. Ry. v. Cooper, 88 Tex. 607, 32 S. W. 517; I. & G. N. Ry. v. Hugen, 45 Tex. Civ. App. 326, 100 S. W. 1003; Milton v. M. P. Ry., 193 Mo. 46, 91 S. W. 949, 4 L. R. A. (N. S.) 283; Conchin v. El Paso & S. W. Ry. (Ariz.) 108 Pac. 260, 28 L. R. A. (N. S.) 88. Under the principle stated, if Malone had not been a deputy sheriff of El Paso county, there could be no question as to the defendant's liability, in view of the uncontroverted evidence, as a matter of law, for the plaintiff's arrest and imprisonment, nor as to the correctness of the charge in so pronouncing the law. But where a person is in the employ of and paid by a corporation, but has been appointed by the proper authority as a deputy sheriff, as Malone was, the question sometimes arises whether, in making a wrongful arrest, he acts as the servant of his employer or as a public officer; and, upon such question, there is a difference of opinion, as shown by the authorities. See Beach Improv. Co. v. Steinmeier, 72 Md. 313, 20 Atl. 188, 8 L. R. A. 846; Walker v. S. E. Ry. Co., 23 L. T. R. (C. P.) 14; Foster v. Grand Rapids, etc., Ry. Co., 140 Mich. 689, 104 N. W. 380. The weight of authority seems to be that a corporation is liable for a wrongful assault or unlawful arrest made, or caused to be made, by a detective or peace officer, employed by it in the course of its business as a watchman or detective, although he has been given police powers by the public authorities at the request of his employer. St. L., etc., R. Co. v. Hackett, 58 Ark. 381, 24 S. W. 881, 41 Am. St. Rep. 105; Dickson v. Waldron, 135 Ind. 507, 34 N. E. 506, 35 N. E. 1, 24 L. R. A. 483, 488, 41 Am. St. Rep. 440; Evansville, etc., R. Co. v. Mc-

Kee, 99 Ind. 519, 50 Am. Rep. 102; Union Depot R. Co. v. Smith, 16 Colo. 361, 27 Pac. 329; Harris v. Louisville, etc., R. Co. (C. C.) 35 Fed. 116; King v. I. C. Ry. Co., 69 Miss. 245, 10 South. 42; Eichengreen v. L. & N. R. Co., 96 Tenn. 229, 34 S. W. 219, 31 L. R. A. 702, 54 Am. St. Rep. 833; Jardine v. Cornell, 50 N. J. Law, 485, 14 Atl. 590; Hershey v. O'Neill (C. C.) 36 Fed. 168. But it is held in some of these cases that the rule must be carefully applied, and that the corporation is not liable for the act of the police officer as such, and not as a servant of the corporation. Ordinarily the question as to whether the wrongful acts were those of the officer or of the corporation is one of fact, and should be submitted to the jury. But in the case under consideration we think it so clearly appears from the evidence that the wrongful acts of Malone were done in his capacity of defendant's watchman, and not in his official capacity, that no reasonable mind can reach any other conclusion. For this reason we think the assignment should be overruled. It is only because the evidence, upon another trial, may be different we have stated our view of the law, and cited authorities in support of it, upon the question.

We overrule the assignment which complains that the verdict is excessive.

On account of the errors indicated by the first and fifth assignments, the judgment is reversed, and the cause remanded.

### On Motion for Rehearing.

In this motion it is insisted that we erred in holding that defendant could not be held liable for any damages sustained by plaintiff by reason of the mock trial he was subjected to by the prisoners with whom he was incarcerated.

We do not understand that plaintiff's counsel question the soundness of the principle that only such damages are recoverable in a case of this character as flow from the false imprisonment as its natural and probable sequence in a continuous, unbroken sequence, but that the insistence is that the indignities he received from being kangarooed by the other prisoners naturally flowed from his wrongful imprisonment.

In deference to the ability and evident sincerity of counsel in urging this contention we have read and considered, as best we could, their argument and all the authorities cited in support of their proposition, though we have not been induced thereby to change our views expressed in our original opinion on the subject. Consequences which follow in unbroken sequence, without an intervening, sufficient cause, from the original wrong, are natural, and for which the wrongdoer is responsible, even though he could not have foreseen the particular results, provided by the exercise of ordinary care or circumspection he might have foreseen some injury would result from his act. "A natural and probable consequence" flows from a "natural

and probable" or proximate cause. Natural consequences are always proximate. As is said in Milwaukee & St. P. Ry. Co. v. Kellogg, 94 U. S. 474, 24 L. Ed. 256: "The primary cause may be the proximate cause of a disaster, though it may operate through successive instruments, as an article at the end of a chain may be moved by a force applied at the other end, that force being the proximate cause of the movement, or, as in the oft-cited case of the squib in the' market place. The question always is, Was there an unbroken connection between the wrongful act and the injury—a continuous operation? Did the facts constitute a continuous succession of events so linked together as to make a natural whole, or was there some new and independent intervening cause between the wrong and injury?" All the cases cited by appellee (S. A. & A. P. Ry. Co. v. Griffin, 20 Tex. Civ. App. 91, 48 S. W. 542; Drumm v. Cessnum, 61 Kan. 473, 59 Pac. 1078; Stoecker v. Nathanson, 5 Neb. (Unof.) 435, 98 N. W. 1061, 70 L. R. A. 667; A. T. & S. F. Ry. Co. v. Rice, 36 Kan. 593, 14 Pac. 229; Gonzales v. Galveston, 84 Tex. 3, 19 S. W. 284, 31 Am. St. Rep. 17), to which we have had access, fully meet the test laid down in the above quotation, and an affirmative answer can truly be given the questions therein propounded, for the purpose of determining the proximate cause of an event.

But when the test is applied to this case, the mind balks in its endeavor to extend the chain of causation from defendant's act of wrongful imprisonment to the mock trial; for it finds the chain of causation too short. The connecting link is missing. And, like Darwin's "missing link" in the evolution of man, it can't be found. The chain has ended, and another and distinct causation, which cannot be connected with the original wrong of the defendant, has commenced, working an injury to the plaintiff which the defendant could not anticipate as a consequence of its wrong, and for which it is not, and cannot be held, responsible.

The case of Indianapolis Traction, etc., Co. v. Springer (Ind. App.) 93 N. E. 707, to which our attention was called by defendant's counsel after the motion was submitted, has no application to the question under consideration. It simply announces the well-established rule of law, as well as physics, that, where several agencies are required to produce a result, or if they contribute thereto as concurrent forces, the presence and existence of one will not relieve the other, because it would still be the efficient cause of the result. But here there was no concurrence in the act of defendant with the act of the prisoners which injured the plaintiff. The injury done him by the defendant was different from that done by the prisoners. In other words, the injuries done him by the one were separate and distinct from those in-

flicted by the other, each arising from separate, disconnected causes, neither of which conspired or contributed to produce the injury done by the other.

The motion is overruled.