FENELON and another vs. BUTTS.

*October 21 — November 3, 1881.*

CHANGE OF VENUE. *(1) Only one change for prejudice of the judge.*
FALSE IMPRISONMENT. *(2) Who liable. (3–5) Evidence to charge defend-
ant. (6) Aggravation of damages. (7) Evidence of good faith in
mitigation of damages.*
INSTRUCTIONS TO JURY. *(8) Defective instructions may be refused.*
VERDICT. *(9) When party entitled to special verdict. (10) Excessive dam-
ages.*

1. A change in the place of trial for prejudice of the judge cannot be
   granted under section 2625, R. S., where a change for that cause had
   already been granted before that section took effect.
2. A party is liable for a false imprisonment if it was for his benefit and he
   approved of it.
3. In an action for false imprisonment, statements of an attorney-at-law in
   reference to the second imprisonment of the plaintiff, then threatened,
   are admissible, where such attorney had acted for the defendant through-
   out the proceedings which resulted in the first imprisonment, and there
   is evidence for the jury that he was still so acting when he made such
   statements; or, where there is evidence that he was a co-conspirator
   with the defendant; or, where such statements were made in the de-
   fendant's presence while the latter was plotting the further imprison-
   ment of the plaintiff, and the evidence is accompanied, or may be fol-
   lowed, by proof of defendant's assent.
4. In such an action, defendant's affidavit for the supplementary proceedings
   in which the imprisonment occurred, is admissible to show that the im-
   prisonment was *for his benefit*, and may also be considered *with other
   acts* of the defendant as tending to show that he *caused* the imprison-
   ment. *Fenelon v. Butts,* 49 Wis., 342, distinguished.
5. A question is not improper merely because one possible answer to it would
   be immaterial; and a question which could not be admitted to establish
   a distinct liability not charged in the complaint, may be admitted to
   show the interest, participation and intent of defendant in the proceeding
   on which the action is founded.
6. In an action for false imprisonment, proof of the circumstances of plaint-
   iff's family, and of the filthy condition of the jail used for the impris-
   onment, is admissible upon the question of mental anguish, etc.
7. It is the settled law of this state, that, while proof of defendant's good
   faith is admissible to mitigate *punitory* damages, it cannot be consid-
   ered to mitigate *compensatory* damages, including those allowed for in-
   jury to the feelings.

8. There is no error in refusing to submit instructions, for the determination of defendant's liability, not containing all the essential requisites upon which that liability depends.

9. The court is not required by section 2858, R. S., to direct a special verdict when not so requested by either party; and a mere request by one party that certain specific questions, and no others, be submitted, is not sufficient.

10. A verdict for $1,000 for a false imprisonment in this case, *held* not excessive.

APPEAL from the Circuit Court for *Dodge* County.

Action for false imprisonment. The case was before the supreme court on a former appeal, and is reported in 49 Wis., 342. A sufficient statement of the pleadings and of the principal facts in the case will there be found. The action was commenced in the circuit court for Fond du Lac county, and, on motion of the plaintiffs, upon the ground of the prejudice of the judge of that court, the venue was changed to Rock county. A trial was there had, which resulted in a verdict for the plaintiffs. A new trial was granted, and on May 6, 1878, upon the ground of prejudice of the judge, the cause was removed, on defendant's motion, to the circuit court for Dodge county. A second trial resulted in a judgment for the plaintiffs, which was reversed upon the former appeal. On the 12th of October, 1880, the defendant, upon an affidavit of the prejudice of the judge of the circuit court for Dodge county, moved for another change of the place of trial. The motion was denied.

Upon the third trial of the action, *Mrs. Fenelon* was permitted to testify, against objection, that, at the time of the imprisonments, her family consisted of four children, the oldest being a girl of eight years, and the youngest a babe of ten months; that the cell in which she was confined had an iron door and stone walls, ceiling and floor, which were damp; that she had an iron bed in the cell, and a straw tick, her baby occupying the cell with her. Testimony was also admitted to the effect that Mr. Hooker, who was the attorney for the defend-

ant in the proceedings which resulted in the first imprisonment of *Mrs. Fenelon*, had said, upon the occasion of her being released upon a writ of *habeas corpus*, that they would have her back in a short time; also testimony as to the making of the affidavit and the institution of the supplemental proceedings, and showing that *Mrs. Fenelon* was taken from her home to the office of Jacobs, the person before whom the proceedings were had, by the direction of the defendant.

The plaintiffs, upon the trial, waived all claim to exemplary damages. The defendant offered in evidence the affidavit, order and other papers, and the records of the supplemental proceedings, for the purpose of mitigating damages. The evidence was objected to by plaintiffs, on the ground that Mr. Jacobs was not an officer; and the court sustained the objection.

At the close of the testimony, the defendant requested the court to direct the jury to find a special verdict and submit to them the following questions: " 1. Did the defendant order, direct or request the imprisonments, or either of them; and, if so, what did he say or do? 2. Did the defendant advise, direct or request the first imprisonment of the plaintiff *Margaret Fenelon;* and, if so, what did he say or do? 3. Did the defendant advise, direct or request the second imprisonment of the plaintiff *Margaret Fenelon;* and, if so, what did he say or do? 4. Did the defendant advise, order or request the first imprisonment of the plaintiff *Margaret Fenelon?* 5. Did the defendant advise, order or request the second imprisonment of the plaintiff *Margaret Fenelon?* " The court refused the request, and also refused to give the following instructions, among others, asked by the defendant: " 1. Under the evidence in this action on this trial, the plaintiffs are not entitled to recover, and your verdict must be for the defendant. 5. If you find that the defendant is liable for this imprisonment, you should take into consideration the circumstances of the supplementary proceedings; and if you find that he was act-

ing in good faith, in an honest endeavor to discover the plaintiffs' property before a person whom he supposed to be a legal officer, these circumstances are to be considered in mitigation of damages."

The court instructed the jury that if the defendant aided, advised or countenanced the imprisonment of *Mrs. Fenelon*, or if he approved of the act after it was done, and it was done for his benefit, he was liable for the damage sustained.

There was a verdict for the plaintiffs, assessing their damages at $1,200. A motion to set aside the verdict and for a new trial, upon the ground, among others, that the damages were excessive, was made by the defendant. Upon the argument of the motion, the plaintiff remitted $200 of the amount awarded by the jury. The motion was then denied, and a judgment for $1,000 damages and for costs was entered. From this judgment the defendant appealed.

For the appellant there was a brief by *Eli Hooker*, with *C. E. Hooker*, of counsel, and oral argument by *Eli Hooker*. They contended, *inter alia:* 1. That the court had no jurisdiction to try the action. Upon the filing by the defendant of the affidavit in pursuance of sec. 2625, R. S., it became the imperative duty of the court to remove the cause. *Baldwin v. Marygold*, 2 Wis., 419; *Rines v. Boyd*, 7 id., 155; *Runals v. Brown*, 11 id., 185; *Western Bank v. Tallman*, 15 id., 92; *Wolcott v. Wolcott*, 32 id., 63; *Hewitt v. Follett*, 51 id., 264. The removal had by the defendant May 6, 1878, was under a statute that did not limit the number of removals, and the defendant has not, therefore, had a removal under sec. 2625. To consider the former removal as under that statute, would be to construe the statute as retrospective, which was clearly not the intention of the legislature. *Seamans v. Carter*, 15 Wis., 548; *Wood v. Oakley*, 11 Paige, 400; *Palmer v. Conly*, 4 Denio, 374; *N. Y. & O. M. R. R. Co. v. Van Horn*, 57 N. Y., 473; *People v. Supervisors*, 63 Barb., 83. 2. The evidence as to the condition of plaintiff's family, and of the

prison cell, should not have been admitted. The defendant was in no way responsible for these circumstances. The testimony was offered solely for the purpose of exciting the sympathy of the jury. 3. Evidence as to what Mr. Hooker said in relation to the imprisonment, was improper. The testimony does not show that he was the agent or attorney of the defendant at the time of the conversation. 4. The plaintiff should not have been allowed to show who made the affidavit in the supplemental proceedings. It is *res adjudicata* that the making of this affidavit is not enough to make the defendant liable. *Fenelon v. Butts*, 49 Wis., 348. 5. It was error to admit testimony as to the arrest and taking of *Mrs. Fenelon* to Jacobs' office. The complaint alleges only two imprisonments, both made after her appearance in Jacobs' office. 49 Wis., 345. 6. Evidence of the supplemental proceedings should have been admitted to mitigate compensatory damages, especially such as should be awarded for injury to the feelings. *Brown v. Swineford*, 44 Wis., 289; *Morely v. Dunbar*, 24 id., 187. 7. The court should have submitted the question for a special verdict asked by defendant. R. S., sec. 2858; *Davis v. Town of Farmington*, 42 Wis., 425.

For the respondents there was a brief by *J. B. Hays* and *L. T. Fribert*, and oral argument by *Mr. Hays*.

ORTON, J. 1. There had been a change of the place of trial, on the ground of prejudice of the judge, from the county of Rock to the county of Dodge, under the law of 1876, on the 6th day of May, 1878. The defendant again made application for changing the place of trial, for the same cause, from the county of Dodge, on the 11th day of October, 1880, which was refused on the ground that there had already been one removal for that cause, and only one could be granted. It is unnecessary to decide whether the statute of 1875, under which only one removal could be had, was or was not repealed by the statute of 1876, in which there was no such limitation; for by the

true construction of section 2625, R. S., no other change of the place of trial could be had after one removal for that cause had been granted. That section, after providing for changing the place of trial on account of the prejudice of the judge, provides further that "but one change of the place of trial shall be granted to the same side, *under the provisions of this section.*" Previous sections provide for changing the place of trial for other causes.

The learned counsel for the appellant contends that this section should be so construed as to allow one removal after this section took effect, and but one, notwithstanding there had been one removal for the same cause under the provisions of the statute of 1876, repealed by the Revision. This statutory limitation is found in nearly all the statutes on the subject since 1858, and it would therefore appear to have been the intention of the legislature to restore the laws of 1858 and 1875, allowing but one removal for this cause in any case; but the language of the limitation, we think, clearly expresses this intention, and means that there should be but one removal for the cause mentioned in this section, and not by the authority and effect of this section. This is not a question of the retroäctive effect of the section, but one of construction only. The motion for such removal from the county of Dodge was therefore properly overruled.

2. The testimony as to the condition and circumstances of the plaintiff's family, and the filthy condition of the jail in which the plaintiff *Mrs. Fenelon* was imprisoned by the defendant and others, was properly admitted as going to the question of her mental anguish, pain, and the suffering, insult and indignity resulting from her imprisonment, as affecting her actual damages.

3. The court properly allowed the witness Leslie to testify what Hooker said in relation to the threatened second imprisonment of *Mrs. Fenelon*, for several reasons: (1) Because Hooker had acted as the attorney of the defendant through-

out the proceedings which resulted in her first imprisonment;
and whether he was still acting as his attorney when he made
the statements imputed to him, and was then conspiring with
the defendant for the reärrest and imprisonment of the plaint-
iff, were questions for the jury, upon which there was at least
some evidence. (2) There had been some evidence that the
attorney, Hooker, had actively conspired with the defendant
in procuring the imprisonment, and therefore his statements
relating thereto were admissible to bind his co-conspirator.
*Hoffman v. Eppers*, 41 Wis., 251. (3) The statements of
Hooker were made in the presence of the defendant, and
while the defendant, at least, was evidently plotting the fur-
ther imprisonment of the plaintiff; and, if not with his tacit
assent, it might have been followed with proof of his express
assent, so that what Hooker said on that occasion was proper
as being introductory to other evidence, or was admissible un-
der the circumstances, which it was the province of the jury
to consider.

4. The affidavit for the supplementary proceedings in which
the imprisonment occurred, was admissible. *First*. Because
it was one of the acts of the defendant to be considered in
connection with his other acts causing the imprisonment.
When the case was before this court on the former appeal (49
Wis., 342), the present chief justice said in the opinion: "The
*mere* fact that the defendant made the affidavit under the cir-
cumstances is not *enough* to warrant the court in ruling as a
matter of law that he was liable for the imprisonment; it
should appear that he did something *more* to bring about or
cause the imprisonment;" clearly implying that the making
of the affidavit was an act proper to be considered with other
acts of the defendant causing the imprisonment. *Second*. It
was proper as showing that the imprisonment was for the bene-
fit of the defendant, so that his subsequent approval of it
would make him liable.

5. The question to *Mrs. Fenelon*, "Where were you taken

Fenelon and another vs. Butts.

from that day?" was in itself proper, although one answer to it might have been complained of as improper,— that she was taken from her own house to the office of Jacobs, the pretended commissioner — an arrest and imprisonment not charged in the complaint as the ground of the action; but it was answered that she was taken from the office of Jacobs, which was proper. The question subsequently put, as to her arrest and being taken to the office of Jacobs by the direction of the defendant, although not proper to establish a distinct liability not charged in the complaint, was proper in order to show the interest, participation and intent of the defendant in the whole proceeding.

6. The plaintiff having waived all exemplary damages, the introduction of the supplementary proceedings by the defendant in order to show his good faith in causing the imprisonment of the plaintiff, and to mitigate the compensatory damages, was properly refused. Whatever may have been the confusion, if not the contradiction, of the decisions of this court on this general question, it was finally put at rest by the able and elaborate opinion of Mr. Justice Lyon in *Wilson v. Young*, 31 Wis., 574. In that opinion the previous decisions of this court and of other courts were critically examined and reviewed, and the principle brought to the test of reason, and the doctrine in this class of cases was established once for all, that compensatory damages were not subject to mitigation by proof of good faith, provocation, or other mitigating circumstances, but that exemplary damages were. In that opinion, however, a distinction is drawn between compensatory damages for bodily and mental injuries, or injury strictly *corporeal* and injury to the *feelings*, and it is held that " damages for injury to the feelings and exemplary damages both entirely depend upon the malice of the defendant, and these may be mitigated;" and it is further held, " that damages for injury to the feelings are *actual* or *compensatory* in their nature cannot well be doubted."

This decision, in the above distinction only, falls short of a settlement of the whole question; and this distinction was afterwards reconsidered and fully withdrawn, by the learned justice who made it, in *Craker v. C. & N. W. Railway Co.*, 36 Wis., 657, and the damages for injury to the feelings are classed strictly and unexceptionally with compensatory damages, and not subject to mitigation any more than any other compensatory damages. These two cases, taken together, are conclusive of the whole matter, and the question is no longer an open one for discussion or review in this state.

7. The circuit court committed no error in not directing the jury to find a special verdict under section 2858, R. S., for it was not requested by either party. The record shows that the learned counsel of the appellant requested the submission of certain questions prepared by himself, and no other, and this the court was not required by law to do.

8. These questions, considered as instructions asked by the defendant, the court properly refused to submit to the jury; for they were all defective in not containing all of the essential requisites upon which the liability of the defendant depended. Considered as instructions, they were, substantially, " Did the defendant order, advise, direct, request or instigate the imprisonment?" or, " If the jury find that the defendant did not order, direct or instigate;" leaving out many other acts for which the defendant might have been equally liable, as aiding, assisting, encouraging, countenancing and approving; and, treated as instructions, they were embraced in the general charge, with these additional requisites of a culpable participation in the trespass.

9. The instruction asked in respect to matters of mitigation was properly refused, as we have already shown.

10. The instruction that the jury should find for the defendant was correctly refused, for there was an abundance of evidence to go to the jury tending to show the defendant liable.

11. The general charge appears to have been fair, full, impartial and correct, and is not subject to the exceptions and criticisms found in the brief of the learned counsel of the appellant, and will not be more specially noticed except that part of it which asserts the liability of the defendant for "approving of the imprisonment if it was for his benefit;" and this seems to be correct, and sustained by the authorities cited in the brief of the counsel for the respondent. 2 Hil. on Torts, 293; *Brown v. Perkins*, 1 Allen, 89; *Judson v. Cook*, 11 Barb., 642.

12. We cannot say that the verdict is excessive. This double arrest and imprisonment without lawful authority, and the taking away from her home and family, and incarcerating in a filthy cell, this wife and the mother of a nursing babe, was a very great personal outrage, insult and indignity, which would necessarily impair her bodily health, and most deeply wound her feelings, and produce great mental anguish, for which $1,000 would not seem to be inadequate by reason of being too large an amount.

*By the Court.*— The judgment of the circuit court is affirmed.