ZASSADNEY *v.* GRAND TRUNK WESTERN RAILROAD CO.

1. MASTER AND SERVANT—SPECIALLY APPOINTED POLICE OFFICERS.
   When specially appointed police officers who are employees of a private employer are acting purely in their capacity as police officers, the employer is not responsible for their acts, it being liable only when it has employed or directed such police officers to act for it and at time of action complained of they were acting in furtherance of the employer's business.

2. SAME—WHEN QUESTION OF CAPACITY IS FOR JURY.
   In case question of employer's liability for acts of employee, who had been duly designated as special police officer, rests upon such undisputed facts as to permit different men reasonably to draw different inferences, the jury shall determine in which capacity a given act was performed.

3. RAILROADS—SPECIALLY APPOINTED POLICE OFFICER—SHOOTING—QUESTION FOR JURY.
   Question as to whether railroad company employee, who had been duly designated a special policeman and special deputy sheriff, acted in capacity of employee or police officer when, although not attempting to arrest anyone, he shot plaintiff, a 15-year old boy who had not interfered with coal train employee was protecting, but was returning home from visit to a relative and had taken short cut across the tracks *held*, for jury.

4. SAME—CONTRIBUTORY NEGLIGENCE—EVIDENCE.
   In action against railroad company and its employee, employed to protect coal train, for wrongful shooting of 15-year old boy on his way home from visit to relatives, plaintiff *held*, not guilty of contributory negligence as a matter of law where he had not interfered with such train in any way.

5. SAME—WILFUL SHOOTING—EVIDENCE.
   In action against railroad company and its employee for wrongful shooting of 15-year old boy, record *held*, to present evidence from which jury could find employee wilfully pointed gun at plaintiff and shot him.

6. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—WILFUL AND WANTON
INJURY.

Doctrine of contributory negligence is not involved where de-
fendant wilfully injures plaintiff, or, having seen him in
danger, even though placed there by his own negligence,
defendant omits ordinary care to avert an injury to plaintiff
and is guilty of wanton injury to him.

Appeal from Wayne; Moynihan (Joseph A.), J.
Submitted April 8, 1936. (Docket No. 17, Calendar
No. 38,774.) Decided June 16, 1936.

Case by Walter Zassadney, by his next friend,
against Grand Trunk Western Railroad Company
and William Bonke for personal injuries sustained
when injured by negligently discharged revolver.
Verdict for plaintiff. Judgment for defendants *non
obstante veredicto.* Plaintiff appeals. Reversed
and judgment ordered entered on verdict.

*Dohany & Dohany (George A. Porter,* of counsel),
for plaintiff.

*H. V. Spike* and *William W. MacPherson,* for de-
fendants.

EDWARD M. SHARPE, J. This is an action to re-
cover damages for the wrongful shooting of plaintiff.
On April 1, 1933, plaintiff, a boy 15 years of age, had
been visiting his uncle who lived a few blocks away
from the home of plaintiff's parents in the city of
Detroit. Shortly after one p. m. plaintiff started
home and took a short cut over the railroad tracks.
After crossing the northerly pair of tracks he saw
a train of cars coming from the west. Plaintiff
crossed in front of the locomotive and walked west
about the length of a car and then turned south
towards his home. While proceeding in a southerly

direction he was shot by defendant Bonke who at the time of firing the shot was three or four car lengths away from plaintiff.

For the past five years Bonke had been employed by the defendant railway company and was on its regular payroll. At the request and upon the application of the railway company, he was appointed a special policeman by the city of Detroit and special deputy sheriff by the county of Wayne; and as such he drew no pay from the city or county. The train upon which Bonke was riding contained 77 cars, mainly cars of coal, and previous to the shooting Bonke had chased persons off of defendant's train who were attempting to steal coal. At no time did plaintiff attempt to get on the train or interfere with any article thereon, nor was Bonke attempting to arrest plaintiff or any others at the time of the shooting.

The cause was tried and submitted to a jury which found in favor of plaintiff and against both defendants. Defendants later presented a motion for judgment *non obstante veredicto* and the same was granted by the trial court. Plaintiff appeals and contends that at the time of the shooting Bonke was not acting as a police officer but rather in the capacity of an employee of defendant railway company.

In *Foster* v. *Railway Co.*, 140 Mich. 689, 692 (18 Am. Neg. Rep. 479), we said:

"So the public authorities in the present case appointed deputy sheriffs, with the same powers and duties as they would exercise in any other place. When acting purely in their capacity as police officers, the defendant is not responsible for their acts. Only when the defendant, through its authorized agent, has employed or directed such police officers to act for it, does it become responsible."

And in *Cook* v. *Railroad Co.,* 189 Mich. 456, 459, this court laid down a broad test which is applicable here. The court said:

"It is contended by plaintiff that at the moment of the shooting Burnett was acting within the scope of his employment. Defendant insists that he was not so acting, but was engaged solely in an act of self-preservation. The test in such cases appears to be: Did Burnett at the time have in mind the furtherance of his master's business?"

See, also, *Murphy* v. *Kuhartz,* 244 Mich. 54; *Anderson* v. *Schust Co.,* 262 Mich. 236.

The rule whereby we determine whether it was the function of the trial judge or the jury to decide whether Bonke was acting as an employee of the railway company or as a law-enforcing officer was settled by this court in *Buman* v. *Railroad Co.,* 168 Mich. 651, 661 (Ann. Cas. 1913D, 107), where we said:

"It is urged by counsel for plaintiff that the question of whether Bachman was acting as a servant of the defendant in the line of his employment, or as a public officer, is a question for the jury, although the facts be undisputed; and in support of that contention many cases are cited.   *   *   *

"These cases and many more are authority for the rule that on a certain class of undisputed facts, from which different men might reasonably draw different inferences, the jury shall determine in which capacity a given act was performed."

We are of the opinion that the testimony relative to Bonke's status at the time of the shooting presented a jury question.

The jury determined that Bonke was acting as an employee of the railway company rather than as a law-enforcing officer. We think the following testi-

mony of Bonke is some evidence upon which the jury could have made such a finding:

"I had an automatic pistol at the time I crossed just to the north of where Manson avenue goes into the right-of-way there. I had an automatic pistol with me at that time. It was partly loaded. It was a .380 calibre, Colt. I believe that is 38/100 of an inch, to be exact. It was my intention, in firing the shot, which I fired along there, to scare boys, to keep them from catching onto the train behind where I was. It was my duty to keep them off, or if they got on to get them off. That is what I was paid for. I was paid to protect the train. The Grand Trunk Western Railroad Company's name is on the check I receive. They pay me."

We are unable to find any evidence that defendant Bonke at the time of the shooting was attempting to make an arrest of anyone. In all probability the jury gave considerable weight to the following testimony of plaintiff in arriving at their determination:

"Before Mr. Bonke shot me he did not holler 'Halt.' He did not say anything. He didn't get off the train. He just went on with the train. Stayed on the car. He didn't say anything to anybody. He didn't say anything to anyone as he passed. * * *

"Q. State whether or not Mr. Bonke left his position after he shot you, that he was in at the time he shot you. State whether or not he moved from that position to another position after he shot you or whether he stayed just where he was after he shot you.

"A. He stayed where he was."

In entering judgment non obstante veredicto for both defendants, the trial court held that plaintiff was guilty of contributory negligence as a matter of law. In this we think he was in error. At the

time plaintiff was shot he was crossing the railway tracks on his way home. He was not interfering in any way with the moving train upon which defendant Bonke was riding.

In the case at bar there is some evidence from which the jury could find that Bonke wilfully pointed the gun at plaintiff and shot him. Plaintiff testified:

"I saw the man that fired the shot. * * * He was on the moving freight train at the time he fired this shot. * * * He was about three or four cars away from me at the time he pulled his gun and shot me. * * *

"I seen him have his gun in his hand. I didn't see him pull it out of the holster. He had it in his hand when I first saw it. He aimed his gun right at me this way (indicating). I heard the shot that hit me. * * *

"I seen him point the gun towards me. After I was shot. * * *

"I saw him twice, the second time when he shot me in the foot. I saw the gun in his right hand. * * *

"*Q.* You saw him aim the gun at you?

"*A.* Yes, sir."

In *Labarge* v. *Railroad Co.,* 134 Mich. 139 (14 Am. Neg. Rep. 575), we said:

"It may be conceded that, where one wilfully injures another, the doctrine of contributory negligence is not involved, because the injury is not *negligent,* but *intentional.* Again, where one is seen in danger, though placed there through his own negligence, one who, thus seeing him, omits ordinary care to avert an injury to him, is not alone negligent, but is wanton, and, as wantonness of this kind is akin to wilfulness, there is an opportunity for applying the same rule, and defendants have been held liable under such circumstances."

Under the circumstances of this case we do not believe that the trial court was justified in holding as a matter of law that plaintiff was guilty of contributory negligence.

The judgment *non obstante veredicto* entered by the trial court in favor of defendants is reversed and set aside and the cause remanded to the circuit court to enter judgment for plaintiff on the verdict. Plaintiff may have costs.

NORTH, C. J., and FEAD, WIEST, BUTZEL, BUSHNELL, and TOY, JJ., concurred. POTTER, J., took no part in this decision.